PETRI BAKING PRODUCTS, INC., Appellant-Respondent, v HATCH LEONARD NAPLES, INC., Now Known as FIRST NIAGARA RISK MANAGEMENT, INC., et al., Respondents-Appellants. [57 NYS3d 838]—

Appeal and cross appeal from an order of the Supreme Court, Chautauqua County (Timothy J. Walker, A.J.), entered June 3, 2016. The order denied the cross motion of plaintiff for summary judgment and granted in part and denied in part the motion of defendants for summary judgment.

It is hereby ordered that the order so appealed from is unanimously affirmed without costs.

Memorandum: Plaintiff, a commercial food baking and production business, commenced this action asserting causes of action for breach of contract, fraud, and negligence/negligent misrepresentation premised upon the alleged failure of defendants (hereafter, First Niagara) to procure flood insurance coverage prior to the flood that damaged its business operations. In September 2003, Brian Conlogue, an insurance broker em-

ployed by First Niagara, summarized the coverage specifications for plaintiff's projected insurance policy, which was provided to him by plaintiff's existing insurance provider. His written summary indicated that plaintiff carried flood insurance. Unbeknownst to Conlogue, and apparently to plaintiff, plaintiff did not in fact carry flood insurance coverage, and the specifications were erroneous in that regard. The error was neither brought to plaintiff's attention by Conlogue nor discovered by plaintiff.

Plaintiff hired First Niagara in September 2003 as its insurance broker, and it authorized First Niagara to procure its business insurance for several years. Each annual policy contained a flood insurance exclusion provision. On September 18, 2006, Walter McFarlane, the brother of plaintiff's chief financial officer at the time, called Conlogue to discuss the flood insurance provisions in the existing policy. McFarlane expressed some confusion and asked, " 'We have flood insurance, right? Because we want it.' " Conlogue indicated that he would "get back to him," but there is no evidence that he did so. On August 10, 2009, a flood event caused damage to plaintiff's business operations. After making a claim, plaintiff was informed that flood coverage was excluded from its policy.

First Niagara moved for summary judgment to dismiss the complaint or, in the alternative, to dismiss plaintiff's claim for lost profit damages. Plaintiff cross-moved for partial summary judgment on its causes of action for breach of contract and negligence/negligent misrepresentation. Supreme Court granted First Niagara's motion in part insofar as it dismissed plaintiff's fraud cause of action, and it determined that no "special relationship" existed between the parties. The court denied the motion in all other respects and denied plaintiff's cross motion. Plaintiff appeals, and First Niagara cross-appeals, from the order.

On its appeal, plaintiff challenges only those parts of the order that granted First Niagara's motion with respect to the issue whether a "special relationship" existed and that denied its cross motion. We therefore deem abandoned any contention by plaintiff with respect to the order insofar as it granted that part of First Niagara's motion for summary judgment seeking dismissal of the fraud cause of action against it (*see Logan-Baldwin v L.S.M. Gen. Contrs., Inc.*, 94 AD3d 1466, 1467 [2012]; *Ciesinski v Town of Aurora*, 202 AD2d 984, 984 [1994]).

We conclude that the court properly granted First Niagara's motion insofar as it asserted that no special relationship existed between the parties. "As a general principle, insurance

brokers have a common-law duty to obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so" (*Nicotera v Allstate Ins. Co.*, 147 AD3d 1474, 1476 [2017], *lv denied* 29 NY3d 907 [2017] [internal quotation marks omitted]; *see Voss v Netherlands Ins. Co.*, 22 NY3d 728, 734 [2014]). "Absent a specific request for coverage not already in a client's policy or the existence of a special relationship with the client, an insurance agent or broker has no continuing duty to advise, guide[ ] or direct a client to obtain additional coverage" (*5 Awnings Plus, Inc. v Moses Ins. Group, Inc.*, 108 AD3d 1198, 1200 [2013] [internal quotation marks omitted]; *see American Bldg. Supply Corp. v Petrocelli Group, Inc.*, 19 NY3d 730, 735 [2012]). "[A] special relationship may arise where '(1) the agent receives compensation for consultation apart from payment of the premiums . . . (2) there was some interaction regarding a question of coverage, with the insured relying on the expertise of the agent . . . ; or (3) there is a course of dealing over an extended period of time which would have put objectively reasonable insurance agents on notice that their advice was being sought and specially relied on' " (*Sawyer v Rutecki*, 92 AD3d 1237, 1237-1238 [2012], *lv denied* 19 NY3d 804 [2012], quoting *Murphy v Kuhn*, 90 NY2d 266, 272 [1997]).

Here, First Niagara met its initial burden of establishing that no special relationship existed, and plaintiff failed to raise a triable issue of fact (*see generally Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). Specifically, First Niagara submitted evidence that it received no compensation from plaintiff over and above the commissions it received for the insurance policies it had procured, that plaintiff did not use First Niagara as its exclusive agent, and that plaintiff retained final decision-making authority over what coverage to obtain (*see Hoffend & Sons, Inc. v Rose & Kiernan, Inc.*, 7 NY3d 152, 158 [2006]; *Sawyer*, 92 AD3d at 1238). Thus, even accepting plaintiff's allegations as true, we conclude that "the record in the instant case presents only the standard consumer-agent insurance placement relationship" (*Murphy*, 90 NY2d at 271; *see Hoffend & Sons, Inc.*, 7 NY3d at 158).

We further conclude, however, that First Niagara failed to tender "sufficient evidence to eliminate any material issues of fact from the case" relating to plaintiff's specific request for flood insurance coverage (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). Although "[a] general request for coverage will not satisfy the requirement of a specific request for a certain type of coverage" (*Hoffend & Sons, Inc.*, 7

NY3d at 158), McFarlane testified that he specifically requested Conlogue to clarify whether plaintiff carried flood insurance coverage, "[b]ecause we want it." Notably, the First Niagara employee in charge of "obtain[ing] flood insurance certificates for client[ ] properties" retrieved plaintiff's certificate the very next day, upon Conlogue's request. We conclude that there are triable issues of fact concerning whether plaintiff made a specific request for flood insurance coverage prior to the flood event (cf. 5 Awnings Plus, Inc., 108 AD3d at 1201; Catalanotto v Commercial Mut. Ins. Co., 285 AD2d 788, 790 [2001], lv denied 97 NY2d 604 [2001]; see generally Hersch v DeWitt Stern Group, Inc., 43 AD3d 644, 644-645 [2007]).

We have considered First Niagara's remaining contention regarding plaintiff's claim for lost profit damages, and we conclude that it is without merit. Present—Smith, J.P., Lindley, DeJoseph, NeMoyer and Curran, JJ.